May it please the court, my name is Bill Dickus, I'm with the firm of Kel Alterman and Runstein, and we represent the insured in this case, Mr. Breeden. We've raised a number of issues, and I do have one correction I'd like to point out in my reply brief, I'll get to it. And I would like to save two minutes of the time for everybody. Two of the issues we raised are matters of first impression under Oregon law. A third is the subject of conflicting holdings in dicta, which go back a century. But there is the first issue I'd like to discuss, which is dispositive of the case that was tried. The district court bifurcated the case. The defenses to the contract of insurance were tried in front of a jury, but the claims under the contract of insurance were not allowed to be tried. But the dispositive question on the issue that was tried, which is the defense to the policy, which is essentially a fraud claim by the insurance company, is that the insurers admitted they did not believe that the initial inventory, which was, I think, the most elaborate anybody has ever seen, they did not believe that it was accurate. They thought, Mr. Boatman testified, he thought it contained things that didn't exist before the filing. So what? I beg your pardon? So what? That doesn't diminish the fact that your client attempted to defraud them and turned in a fraudulent statement. That's not being sued for fraud. Somebody's not trying to prove damages in the form of justifiable reliance. So I don't understand how the purported reliance or nonreliance of the insurance company matters. The Waller case, the Walker case, the Eade case, and the Esselmeister case all hold that in order to avoid an insurance contract on grounds of misrepresentation, the insurer must establish every element of a common law fraud claim. Now, there's a hiatus in Oregon law for 21 years. It was established by Henriksen in 1964, and it held, somewhat out of the blue, without discussing the prior precedents, that you don't have to prove belief, reliance, or damages. And that was a windfall to the insurance companies because they could have a $500,000 policy of insurance, and if they could find a $500 lie somewhere, which they didn't even believe, they could argue that voided the policy. And you'll find a plethora of cases in that 21-year hiatus that argue a lie without belief, and they win. But in 1985, the Oregon legislature said, you can't do that anymore. If you're going to argue that a representation by the insured voids the policy, the insurer must prove that the misrepresentation was material and that the insurance company relied on it, and they can't prove reliance in this case because they believed it was false. Reliance and belief aren't the same thing. Can you give me a law that says they are the same thing? Yes, Cheney. I mean, there are a lot of cases where an insurer is forced to rely upon or act in response to a submission because it may not be able to affirmatively disprove it, and there are affirmative obligations put on insurers to respond to claims. In this case, your client turned in a claim, and the insurer did, in fact, fund your client some money. I don't know of any law that says that the insurance company can't rely, even if it has its own suspicions that the statement is not true. Well, the prior panel that heard the summary judgment appeal found to the contrary, and it's... I've read their disposition. I don't see anything that's very authoritative that speaks to the issue I just raised. Cheney v. Field Chevrolet, the plaintiff... Are you citing the prior panel or are you not citing Cheney? No, I'm citing the brief, Cheney v. Field Chevrolet. So what does the prior panel have to do with this? It cited Cheney v. Field Chevrolet. The Cheney v. Field Chevrolet, the plaintiff was lied to by a car dealer. The plaintiff did not believe the lie. The Oregon Supreme Court held that if you don't believe the lie, you don't have a fraud case.  case. The concurring opinion of Justice Holman held that this was merely an attempted fraud, and there is no claim under Oregon law for attempted fraud. If there's no belief, there's no reliance. And we have Mr. Boatman... Well, detrimental doesn't necessarily mean damages. I'm not sure of the distinction, Your Honor. The formulation of the typical fraud claim that anybody has to prove varies slightly from case to case. The one we cited in the brief says it has to be believed and then relied upon to its damage. Well, in this case, reliance was submitted to the jury, right? Belief was not submitted to the jury. Reliance was. The word. But the clarifications, the tenet... The element of reliance was submitted to the jury. It was combined with material in a single sentence. The element of belief was not submitted to the jury. It was an instruction we proposed, and the judge refused it. And you contend that was there? Yes. There is a citation from the excerpt of record at page 10 of our reply brief. I'm quoting the testimony of Mr. Blodgett, who made a later small payment to the insured. And during his testimony, I asked him to confirm his prior deposition testimony from six and a half years previously. And the citation or the quotation leaves out his answer at the bottom of page 10. The question was, but the misrepresentation that you were suspicious of was on contents, not structure, right? And the quotation leaves out his answer, which was, yeah, which makes the whole claim in question. And that quotation in full is in the excerpts of record, but they're not at page 335. They're at 435. That was a typographical error, and we apologize for that. So the answer was, yeah, which makes the whole claim questionable? Which brings the whole claim in question, Your Honor. Which makes the whole claim in question. And that's at 435, 436 of the excerpts of record. So we have the two witnesses who wrote all the checks, except the first one for incidentals. Mr. Boatman replaced the lost check for $5,000. He wrote one for $5,100 more. Mr. Blodgett, six weeks later, wrote one for $3,000. This against at least a $400,000 insurance policy. They both say, we knew there was an investigation for fraud. I didn't believe the items on the list existed. I thought the values were overinflated. They nevertheless wrote the checks. That can't be reliance under the authority of Cheney. If you don't believe it, you don't have a fraud claim. If you can't prove the elements of fraud, you can't void the insurance policy. Well, if you can't prove the elements of fraud, suspicion doesn't necessarily provide proof. At that point in time, the insurance company may have had lots of suspicion, but if they fail to pay a claim, they could be in trouble there. So how is that not reliance? Suspicion negates an essential element of fraud, which is belief. You don't see that element. I've never heard of fraud defined to have belief as a separate element. Reliance, yes. Belief, no. Is there any case law that supports the proposition that affirmative belief is an element of fraud? Cheney? Waller? Cheney actually says belief is an element of fraud? Yes, Your Honor. Can you give me the page citation? Maybe. Hang on. I have it here. Starts at 6 – I have the Oregon reporters, 258, Oregon. Starts at 611. 611. And carry over to 612, including the footnote. 611 to 612. Yes, Your Honor. Okay. 611 to 612. Is there a footnote number? What footnote? Footnote number one on page 612. The element. Well, what Cheney seems to say there, it does mention belief. It says the plaintiff failed to prove that he relied on a misrepresentation of the defendant. The plaintiff always considered the defendant's claim for deficiency was inaccurate and he did not rely on it and refused to pay it. Right. I still don't see belief here. You said it mentioned. It says belief. Just a minute now. You represent that Cheney says belief is an element of fraud. I'm looking for it in Cheney. At page 611, Your Honor. And where does it say that belief is an element of fraud? The citation from Musgrave. There are nine elements. Number six is the heritor's ignorance of its falsity. Number seven is his reliance on its truth. That means belief? Yes. It just means reliance. That's just another way of saying it. Reliance on its truth, Your Honor. And that's the element that's discussed. It doesn't mean he has to believe it. It just means he has to rely on it. How can you rely on the truth of an assertion that you suspect to be a lie? Because as Judge Clifton said, sometimes you have to, even though you don't believe it. We have immigration judges all over the country that are forced to believe things they don't really believe because our case law says unless you can prove to the contrary, you have to accept the petitioner's statement. In this case, we have insurance companies all over the country that are forced to accept claims about which they may be skeptical, but unless they can affirmatively disprove, they are required to respond as insurance companies are required under the law. And so it seems to me in this context, there's a clear gap between suspicion and doubt, and we're going to investigate this further, and having to act upon the statement that's submitted. Let me add a fact to that, Your Honor. There was a written agreement that covered this advance which said it was not payment under any coverage of the policy. It was an advance to alleviate hardship only, and if any of the payments we make under this policy are not appropriate, you agree in writing to refund the payment. It wasn't payment in reliance and belief on the truth of an inventory. And we spent all but a minute and a half on that first issue out of six. Let me tell you one other dispositive issue, and I may lose my rebuttal. The girlfriend testified she had her own things written on the policy. If it was covered, it wouldn't have been fraud. The jury wasn't allowed to know that. But more importantly … And it seems to me that Mr. Breeden was aware that Allstate took the position. They told him specifically that her property was not covered. They did. He didn't submit something saying, and I think this is covered, too, this is her property. He turned in a list that represented that her property was his. He's a truck driver. He took everything out of that list after they said that wrongly, except one-half of one page that he overlooked, and that got to the jury. The most important other issue is there's no proof that he lied about the cost or the elements of reconstructing the house that was totally destroyed. All the contents were also totally destroyed. The insurance company admits that. There are two Supreme Court holdings that say the contents are divisible from the structure, and there is one footnote to a prior 1899 holding, which is dicta. It says otherwise. And we asked that to be certified to the Oregon Supreme Court to clarify it, and that motion was also refused. I have 10 seconds for rebuttal. I'll give you a minute. Don't worry. Thank you, Your Honor. Here's the other side. Morning. May it please the Court. Beth Caponi, appearing for all States. We're here before the Ninth Circuit for the third time. The two prior opinions that were referenced were from 2004 and 2007, and on those two occasions, we were before this Court in a very different posture, and that was in summary judgment posture. And the Court on two prior occasions decided these questions are questions for the jury, whether these misrepresentations voided the policy. And so Breeden 1 and Breeden 2. And so in Breeden 2, they said, well, the willfulness of the misrepresentations was a question of fact. Well, that's been decided now. This jury decided that these misrepresentations were willful, and second, materiality was also a question for the jury. This jury decided these misrepresentations were material. And the third thing was reliance. Each of these questions were asked to the jury, and the jury decided, yes, all State relied. I would like to add something to the discussion of reliance on the characterization of the testimony. The testimony from all States' adjusters, Rasmussen and Boatman and Blodgett, were that at the time they made advance payments to Mr. Breeden, they had the inventory in hand. They reviewed the inventory and they said, we believe our insured. Our insured has submitted us an inventory to us. Yes, we might have some questions about this inventory, but we believe them. We had no reason to disbelieve the insured. So we would strongly disagree with Mr. Dickus's characterization of what the testimony at trial was. Well, but what about, you know, the piece of paper the insured has to sign when they get these advances? Doesn't that negate reliance? No. It doesn't negate reliance. I mean, that piece of paper says that this payment isn't towards some one particular coverage, although there's testimony in this case from Mr. Boatman and Mr. Rasmussen that this was these advance payments were made specifically on the contents. In other words, they reviewed the inventory. I know that, but the written release or whatever you call it is to the contrary. I guess I'm not – I don't believe the advance payment agreement has anything to do with whether the company relied, because the company made payments based upon the representations of the insured. No, but they made payment with the assurance that, well, we can always get it back. Well, I think even so, the insurance company can still rely. They still have to expend – they still have expended money, and they will expend money given it back. And in this case, of course, there was testimony that all that money was quickly spent and, of course, could never be given back. I thought there was some testimony that they didn't complete their investigation or something. There was something about they delayed their investigation after they received his inventory statement. You're asking if there was some evidence? Wasn't there some evidence to that effect? That they delayed their investigation? I don't believe there was any evidence that they delayed it. What happened is they received an inventory, an August 15th inventory. They – then he quickly requested advance payments. They made a couple of advance payments, one for $5,000 on August 17th. So the only reliance here is just they paid out money? Reliance – well, that's one issue, yes. They paid out money. Also, if I can have a quick comment on the advance payment agreement. Also, whatever that agreement says, that agreement was signed on September 22nd. Before that, advance payments had already been made in reliance upon the inventory. So there are some payments made before that advance agreement was signed. The second evidence, other than paying money, which, of course, is reliance to the company, is paid money, that is detriment, is additional investigation costs were incurred. And that was – But doesn't Oregon State law say investigation is not reliance? Investigation – and you'll see that in Breeden, too, where the court makes a comment that investigation alone may not be considered reliance. I think that's the exact quote from Breeden, too. Let me – I think investigation may not be reliance. In this case, what we have is we don't have investigation. We have additional expenses that were incurred over and above what a company would do to investigate a claim. And in this case, it was a higher – Well, you're just talking about, you know, more extensive investigation expenses. That's all. Well – And that's still investigation. Right. And I'm not taking the position – I don't think there's anything that says that investigation cannot constitute reliance, number one. It said it may not constitute reliance. Here we have a payment and we have investigation. And in this case, we have investigation based on what Mr. Breeden told Allstate that could be found at the property. And that was an expenditure of thousands of dollars to send somebody out there, a personal property appraiser who was Randine Cummings. And what happened was Mr. Boatman had been at the scene and there were some – it was a total loss and there was some furniture that Mr. Breeden had claimed that was expensive. And Mr. Breeden had also claimed 800 videocassettes, which he later admitted was more like 300. And what was actually found was more like 75. And so at that point, there were some questions. And someone sat down with Mr. Breeden before they made that second advance payment and said, do you represent that this is a truthful and accurate inventory? And Mr. Breeden said, yes, you know what? If you send someone down to that scene and you look at those ruins, you're going to find evidence of those videotapes. You're going to find evidence of the Universal Queen Lodge bed that's in the closet. You're going to find evidence of China and evidence of all these videotapes. And the company said, okay, well, we believe you. And the testimony was specifically, we believe Mr. Breeden and we're willing to send someone down there and pay someone because he said, look, if you go down there, we'll find it. Okay, we're going to send someone down there. That is also a reliance. That additional expense, that isn't something that would be done in just a normal claim. This was done specifically in response to Mr. Breeden's representations that that inventory was accurate. So the reliance is twofold in this case. And Cheney doesn't, I don't know that we have to go into Cheney anymore, but it doesn't stand for the proposition that we heard here today. In Cheney, there was no question that there was no reliance because from the beginning they said, we just didn't believe. We didn't believe this person. So there was just no reliance. We didn't rely on it. A couple of other points to raise quickly. There's been a lot of discussion of what the elements of fraud are. This was, this is a statutory base. It's 742-208, and elements are specifically set in on that statute. The jury instruction exactly tracked that statute, and so it was complete. As far as the couple of other issues you quickly raised, just a couple of comments on the guest issue. Ms. Hardin was not a guest at the time of the fire. She wasn't a guest or a resident. She had moved out a week before. So the issue of whether or not that property is covered under the policy is really a non-issue. And when she did live there, she was a resident. It's a non-issue. If I stay at somebody's house as a guest and leave something behind, that can't be claimed as part of the contents of the home? No, because you're not a guest. The property only covers a guest property at the request of the insurer and not somebody who's a guest of your residence. That doesn't include, I mean, with that theory. I've got to be a guest to the insurer of Allstate? I'm sorry, what? I think you just said guest to the insurer. Insured. Insured. Insured. And so that property isn't covered under the policy. But aside from that, and I don't think the court needs to even go there, because when she lived there, she was paying part of the mortgage. She used that as her primary address. I mean, she lived there. She was not a guest of the insured. And as the lower court said, guest is one who is a recipient of hospitality at the home of another. This was not the home of another. This was her home. When she lived there, she was a resident. She had moved out. Her property just simply was not covered under the policy. He did mention the divisibility issue. Unless the court has any questions. I do have one question on that, which is the case law appears to be old. And as a truism, the law abhors forfeiture. And in this case, it seems to be that the penalty set up under this provision of the policy, which is dictated by Oregon law, is exactly that, forfeiture. If you overreach, then you lose everything. Because there's little doubt. I mean, there may be some questions about the origin of the fire and so forth. But what's in front of us is that the house did burn down. The house, the structure, the dwelling itself was a total loss. The contents that he did properly possess and would have been proper subjects of coverage were lost. And yet he gets nothing. What is it in Oregon law that dictates the forfeiture that ordinarily the law dislikes? That is based on the statutory language, which is what this was raised in the motion in Lemony and what Judge King ruled, which what it says is the entire policy is void. And so Judge King says entire means entire. And when you make a misrepresentation, the entire policy is void. That's clear on its face. And the case law in Hendrickson is also clear. An insurance contract will not be construed as severable between classes of property it covers. A misrepresentation after the loss as to a single material fact will forfeit the entire insurance contract. That is still good law. That case is from 1964. There is nothing that has overruled that case. And there's an 1899 case which that case cites, which says void in part, void in total. Where a contract is affected by some all-pervading vice such as fraud, the entire contract is void. And so we're relying on the case law and we're relying on the language of the policy and the statute which is read into the policy. We're about to respond to Mr. Dickus' suggestion that we certify that question to the Oregon Supreme Court. I don't. My response to that is no, because it's not a question. It's not an open question. I would disagree with Mr. Dickus that after reading the case law that this is a question that has not been decided. I mean, unless the Court would construe entire policy meaning something else. I mean, and it makes sense. The policy behind this is, is that, you know, fraud pervades an entire contract. And in that concept, there's nothing in Oregon law that says anything different. The two cases that Mr. Dickus does cite, one is Oatman. That does not involve misrepresentation. So the issue of whether fraud is pervading the contract wasn't even an issue there. And in Walker, Walker involved multiple policies for multiple cars. And so the Court said, you know, if you misrepresent as to a certain vehicle, there was a separate note and a separate policy for each car. Well, that's very different than what we have here, which is one homeowner's policy, different coverages within it. But the bottom line is the insured lied. The jury found that the insured made multiple, I mean, there were multiple misrepresentations testified throughout here. The testimony was clear from even Mr. Breeden's admission that that inventory was not accurate. And, you know, his fiancée came in and said that he instructed the children and her to put down items that just didn't exist, that weren't in the house. And so misrepresentation has occurred here, and that pervaded the entire contract. I heard on the radio this morning a story about, I think it was the BP Gulf problems, and Kenneth Feinberg, who's overseeing the recovery process, reported that the claims were wildly inflated. Huge numbers of claims are wildly inflated. There may be a comment on human nature. I'm not sure exactly how it pushes me in this case, but I think the reality of it is that Oregon appears to have set up a policy that says overreach and your hand gets chopped off. And that's taken the position that all states are trying to enforce here. That's correct. Anything else? No. Thank you. Thank you, Your Honor. Please read Mr. Boatman's testimony. He didn't say he believed the inventory. He said he suspected there were lies. The insurance company has a duty by law to investigate. That was an instruction that was rejected. The investigator was hired by the fraud investigator, who didn't even disclose to the insurer that that's what she was doing. If they're already investigating for fraud, that's evidence of suspicion. It's evidence of disbelief, which we contend is a necessary element of avoidance case. The policy says guest property is covered so long as the property is in the home, which it was. It was burned up in the fire, even though she was in the process of moving out with her children. The language that you focused on, the entire policy is void, that originates from an 1899 contract. And it was transferred into the 1907 Oregon Insurance Code. And when it was first interpreted in Oatman in 1913, it was interpreted to mean the coverage at issue. And in that case specifically, the Oregon Supreme Court said that personal property coverage may be covered, even though the dwelling coverage is void because the alleged owner didn't own it. In the Walker case, that same language is in the policy. It's a single insurance policy for 17 cars. Each car had a specific note which described its year and value. And the court held in the Walker case that lies about the value or age of any one of the cars would void that car's coverage only, not the other 16 cars. And when we adopted the Unfair Claims Practices Act, one of the prohibited practices is to delay paying one coverage in order to influence the settlement of another coverage. The law in Oregon has for until the footnote in Hendrickson revived Fowler from 1899, treated coverages as the policies. And nobody has yet taken the question back to the Supreme Court since the footnote in Hendrickson.  We appreciate your arguments, and that matters to me.
judges: Tashima, Paez, Clifton